FILED
2017 Nov-30 PM 03:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES MACON, | |
| PLAINTIFF, | |
| V. | CIVIL ACTION NO.: |
| XTREME CONCEPTS LLC, | JURY TRIAL DEMANDED |
| DEFENDANT. | |

## COMPLAINT

### I. JURISDICTION

1. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201 and 2202 and pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* District Court jurisdiction exists pursuant to 29 U.S.C. §§ 215(a)(3) and 217 and 28 U.S.C. § 1331. The jurisdiction of this Court is invoked to secure the protection and redress the deprivation of rights secured by the FLSA.

### II. PARTIES

2. Plaintiff, JAMES MACON (hereinafter "Plaintiff"), is a resident of ANNISTON, CALHOUN County, ALABAMA, and performed work for the Defendant in the counties composing the NORTHERN District of Alabama during the events of this case. Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the NORTHERN District of Alabama, SOUTHERN Division.



3. Defendant, XTREME CONCEPTS LLC., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar work weeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

### III. STATEMENT OF THE FACTS

4. Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1-3 above.

5. Defendant hired Plaintiff on or about July 14, 2016.

6. Defendant employed Plaintiff as a Kennel Technician and Maintenance Man.

7. Plaintiff's hourly wage was $8.00 per hour.

8. A few months later, Defendant raised Plaintiff's hourly wage to $8.75 per hour.

9. In December 2016, Defendant raised Plaintiff's wages to $9.00 per hour.

10. In April 2017, Defendant again raised Plaintiff's wage to $15.00 per hour.

11. In May 2017, Defendant lowered plaintiff's wage to $10.00 per hour.

12. Plaintiff's wages remained at $10.00 per hour until Defendant terminated his employment on or about August 21, 2017.

13. During the course of his employment, Plaintiff was required to come to work at or around 7:00 a.m., each day and routinely worked until 4:30 p.m. or 5:00 p.m.

14. Although Plaintiff was told that he would be given a one-hour lunch break each day, he was routinely prohibited from taking amount of time allotted for his lunch break.

15. Even when Plaintiff was not permitted to take his lunch break, Defendant deducted hours for his lunch regardless of whether he actually took the full hour's break or not.

16. Plaintiff was typically scheduled to work six days per week.

17. During the first two months of his employment with Defendant, Plaintiff was required to work seven days per week on several work weeks.

18. During those weeks, Plaintiff was working at least eight hours per day and sometimes as many as 12 hours in a day.

19. During the course of his employment, Plaintiff was required to take sick dogs home with him so that their diseases would not spread to other dogs.

20. Plaintiff would then feed, walk, clean and generally care for the dogs.

21. Plaintiff kept ten of Defendant's dogs at his home for six months.

22. On average, Plaintiff spent 5 hours per day caring for the sick dogs after his normal working hours.

23. During the course of Plaintiff's employment, Defendant changed the length of its pay period on multiple occasions resulting in inconsistent and erratic pay fluctuations.

24. As a result of the changes in pay periods, Defendant often received less pay than he was due based on the hours he had actually worked.

25. On or about August 21, 2017, Defendant terminated Plaintiff's employment.

26. Plaintiff received his pay check for the period covering the pay period that ended on August 10, 2017.

27. To date, Plaintiff has not received his final pay check.

28. To date, Plaintiff has not received the overtime shift premium that he is owed.

29. At all times during the employment relationship, Defendant classified Plaintiff as an hourly paid, non-exempt employee.

30. During the three years preceding the filing of this Complaint, Plaintiff typically worked over forty hours in a work week.

IV. **COUNT ONE – FLSA OVERTIME VIOLATION**

31. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 30 above as if fully set forth herein.

32. During the three years preceding the filing of this Complaint, Defendant is an enterprise engaged in commerce or the production of goods in commerce as defined by 29 U.S.C. 203(s)(1).

33. During the three years preceding the filing of this Complaint, Defendant has been a company whose employees, including the Plaintiff, are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce.

34. Defendant's gross annual volume of revenue exceeds $500,000.

35. At all times relevant to this action, Defendant was an employer of Plaintiff as defined by 29 U.S.C. § 203(d).

36. During the three years preceding the filing of this Complaint, Plaintiff, was an employee of Defendant as defined by 29 U.S.C. § 203(e)(1).

37. Plaintiff was engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendant. Plaintiff's interstate commercial activity included, but was not limited to, caring for and preparing dogs for sale across state lines that originated out of state or outside of the United States.

38. During the three years preceding the filing of this Complaint, Defendant recorded Plaintiff's hours worked in excess of forty hours for a work week on at least one or more occasion.

39. Defendant failed to pay Plaintiff for all hours worked in excess of forty in a work week.

40. As the result of Defendant's willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of overtime pay.

V. **COUNT TWO - FLSA -MINIMUM WAGE VIOLATION**

41. Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 40 above as if fully set forth herein.

42. During the two years preceding the filing of this complaint, Defendant failed to pay Plaintiff the federally mandated minimum wage in one or more weeks in which he worked but did not receive his final pay check.

Because of Defendants' willful and intentional violation of the FLSA, Plaintiff has been damaged, suffering loss of the federally mandated minimum wage for all the hours he worked.

VI. **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

      A.    The Court issue proper process to compel Defendant to answer or otherwise plead to the allegations contained in the Complaint;

      B.    This Court award Plaintiff back pay, front pay, back overtime pay, plus an additional equal amount as liquidated damages; nominal damages; and special damages;

      C.    That Plaintiff be granted judgment against Defendant for all reasonable attorneys' fees, costs, disbursements and interest; and

      D.    For such other and further relief as this Court deems equitable, proper and just.

/s/ Kira Fonteneau
Kira Fonteneau

/s/ Allen D. Arnold
Allen D. Arnold

OF COUNSEL
Fonteneau & Arnold LLC
2151 Highland Avenue South, Suite 205
Birmingham, Alabama 35205
T: 205.252.1550 F:205.502.4476

PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

*/s/*

OF COUNSEL

PLEASE SERVE DEFENDANT(S) AT:
XTREME CONCEPTS LLC
Landon Ash
2201 LANE PARK ROAD
Birmingham , Alabama 35223